LAW OFFICE OF HARRIETTE N. BOXER
Attorney for Plaintiff, Stanislav Levin
31 East 32nd Street, Suite 300
New York, New York 10016
212-481-8484
Harriette N. Boxer, Esq. HB-9681

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
STANISLAV LEVIN,

       Plaintiff,                          Civil Action No.:  2011 CIV 5252- RJS

  -against-                                   ECS CASE

CREDIT SUISSE INC., METROPOLITAN
LIFE INSURANCE COMPANY, and
AON HEWITT, INC.

       Defendants.
-------------------------------------------------------x

LEVIN'S MEMORANDUM OF LAW
IN OPPOSITION TO **CREDIT SUISSE/HEWITT's** MOTION TO DISMISS

LEVIN'S MEMORANDUM OF LAW
IN OPPOSITION TO **CREDIT SUISSE'S AND AON HEWITT'S** MOTION TO DISMISS

TABLE OF CONTENTS

Page

Table of Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Argument

    1.    Credit Suisse as well as Aon Hewitt
        owed and owe several fiduciary duties
        to Levin and should be found liable to Levin
        for any breach of these duties . . . . .  4

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

## CS/HEWITT TABLE OF CASES

|  | Page |
|---|---|
| *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*<br>493 F.3d 87 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . | 1 |
| *Becher v. Long Island Lighting Co.*<br>129 F.3d 268 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . | 6 |
| *Bilello v. J.P. Morgan Chase Retirement Plan*<br>649 F.Supp.2d 142, 166 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . | 6, 15 |
| *Biomed Pharmaceuticals, Inc. v. Oxford Health Plans (N.Y.), Inc.*<br>775 F.Supp.2d 730 (S.D.N.Y.,2011) . . . . . . . . . . . . . . . | 4 |
| *Bouboulis v Transport Workers Union of America*<br>442 F.3d 55, 63 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . | 5, 15 |
| *Bowerman v. Wal-Mart Stores, Inc.*<br>226 F.3d 574 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . | 13-14 |
| *Burns v. Marley Co. Pension Plan for Hourly Employees at Stockton, Cal.*<br>2009 WL 1193474 (E.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . | 7 |
| *Caputo v. Pfizer, Inc.*<br>267 F.3d 1818, 1983 (2d Cir. 2001) . . . . . . . . . . . . . . . | 10 |
| *Cigna Corp. v. Amara*<br>131 S.Ct. 1866, 1878 (2011) . . . . . . . . . . . . . . . | 12 |
| *Coan v. Kaufman*<br>457 F.3d 250 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . | 11 |
| *DeSilva v. North Shore–Long Island Jewish Health System, Inc.*<br>2012 WL 748760 (E.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . | 1, 2 |
| *Devlin v. Empire Blue Cross & Blue Shield*<br>274 F.3d 76 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . | 6 |
| *Dudick v. Kaszycki & Sons Contractors, Inc.*<br>974 F.2d 270 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . | 11 |
| *Estate of Becker v. Eastman Kodak Co.*<br>120 F.3d 5 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . | 10 |

Page

*Gannon v. NYSA-ILA Pension Trust Fund and Plan*
   2011 WL 868713 (S.D.N.Y.) . . . . . . . . . . . . . . .   4-5

*In re Bank of America Corp.*
   756 F.Supp.2d 330 (S.D.N.Y. 2010) . . . . . . . .   1

*Karagozian v. Coty US, LLC*
   2011 WL 536423 (S.D.N.Y.) . . . . . . . . . . . . . . . . .   1

*Ladouceur v. Credit Lyonnais*
   584 F.3d 510 (2d Cir. 2009) . . . . . . . . . . . . . . . . .   13

*Mass.Mut. Life Ins. Co v. Russell*
   473 U.S. 134 (1985) . . . . . . . . . . . . . . . . . . .   11

*Payne v. POMCO Group*
   2011 WL 4576545 (S.D.N.Y) . . . . . . . . . . . . . . . . .   1

*Perreca v. Gluck*
   295 F.3d 215 (2d Cir. 2002) . . . . . . . . . . . . . . . . .   13

*Pierce v. P & A Administrative Services, Inc.*
   2011 WL 2261116 (W.D.N.Y. 2011) . . . . . . . . . . . . . . .   1

*Reid v. Local 966 Pension Fund*
   2004 WL 2072086 (S.D.N.Y.) . . . . . . . . . . . . . . .   6

*Robinson v. Sheet Metal Workers' National Pension Fund, Plan A*
   441 F.Supp.2d 405 (D.Conn. 2006) . . . . . . . . . . . . . . .   4-5

*Smith v. Stockwell Const. Co., Inc.*
   2011 WL 6208697 (W.D.N.Y.) . . . . . . . . . . . . . . .   5, 15

*Tocker v. Kraft Foods North America, Inc. Retirement Plan*
   2011 WL 1795811 (S.D.N.Y.) . . . . . . . . . . . . . . .   5

*Varity Corp. v. Howe*
   516 U.S. 489, 116 S.Ct. 1065, (1996) . . . . . . . . . . . . . . .   4

*Wilkins v. Mason Tenders Dist. Council Pension Fund*
   445 F.3d 572, 581 (2d Cir. 2006) . . . . . . . . . . . . . . . . .   4-5

Preliminary Statement

In order to survive Credit Suisse's (hereinafter "CS") and Aon Hewitt's (hereinafter "Hewitt") instant motion to dismiss, plaintiff, Stanislav Levin, (hereinafter "Levin") must demonstrate, first, that he has articulated facts/circumstances which allow this Court to at least arguably conclude that CS and Hewitt have mis-conducted themselvesitself[1] and, second, that CS and Hewitt are liable for such misconduct, that is, that Levin articulates cognizable causes of action against CS and Hewitt.  *In re Bank of America Corp.*, 756 F.Supp.2d 330, 344-345 (S.D.N.Y. 2010); *DeSilva v. North Shore–Long Island Jewish Health System, Inc.*, 2012 WL 748760 (E.D.N.Y.) at *4.

In adjudicating this motion, the Court may consider not only Levin's complaint[2] but, additionally,  "documents attached as an exhibit thereto or incorporated by reference." *Karagozian v. Coty US, LLC*,  2011 WL 536423 (S.D.N.Y.) at *2; "documents possessed by or

---

[1] *See, e.g., Pierce v. P & A Administrative Services, Inc.*, 2011 WL 2261116 (W.D.N.Y. 2011) at *6:

> [T]he court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974); *Goldstein v. Pataki,* 516 F.3d 50, 56 (2d Cir.2008) (court is required to liberally construe the complaint, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor)  . . .  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 570). The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly,* 550 U.S. at 570.

*See also, Payne v. POMCO Group*, 2011 WL 4576545 (S.D.N.Y) at *2.

[2] The word "complaint" used throughout this Memorandum of Law refers to Levin's Second Amended Complaint, filed and served on January 25, 2012.

1

known to the plaintiff and upon which [he] relied in bringing the suit" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007); and/or "documents or information contained in defendant's motion papers [of which] plaintiff has knowledge or possession ..." *DeSilva v. North Shore–Long Island Jewish Health System, Inc.*, 2012 WL 748760 (E.D.N.Y.) at *4.

Levin argues in this Memorandum of Law in Opposition to CS's and Hewitt's Motion to Dismiss that by utilizing the complaint and other relevant documents he meets these burdens.

Levin utilizes the Preliminary Statement to dispute CS's/Hewitt's statement (made without support) on page 3 of their Memorandum of Law in Support of their Motion to Dismiss (hereinafter "CS/Hewitt MemSupp.) that "MetLife issued a group policy of insurance to the Plans to fund benefits under the Plans ...." In contradiction, on page 6 of the "Advice-to-Pay Administrative Services Agreement" (annexed as Exhibit B to the MetLife MemSupp, hereinafter "ASA") it states, in relevant part:

> ...Plan Benefits are funded by Customer's own funds and not pursuant to any insurance contracts. Customer and MetLife agree that liability for Plan Benefits is always the obligation of the Customer and in no event shall MetLife be liable for any amount of Plan Benefits or other payments made or owed by Customer to Participants.

Further, the SPD states on page 40 that MetLife is the insurer for the LTD Plan but that CS is the Sponsor of the Plan. In common parlance "sponsor" means the entity that funds or pays for, e.g., ., the Plan. Further on page 13 of the ASA, it states, in relevant part: "In no event will MetLife be liable for any amount of Plan Benefits paid as a result of Plan Benefits Litigation or any amount of legal fees or costs awarded to a Participant or Plan beneficiary in connection with Plan Benefits Litigation." Therefore it is far from established that MetLife has funded or is in any way liable under any part of the Plan. Such ambiguity, then, demonstrates a plausible conflict of interest in CS. If CS is ultimately liable to actually pay for disability benefits and/or for

2

wrongfully denied benefits, then its failure to provide Levin with full and complete information about his eligibility for and extent of disability benefits should be deemed to be self-serving and willful as opposed to, say, negligent.

POINT I

METLIFE OWED AND OWES SEVERAL DIFFERENT
FIDUCIARY DUTIES TO LEVIN AND SHOULD
BE FOUND LIABLE TO LEVIN FOR ANY BREACH
OF THESE DUTIES

Under 29 U.S.C. §1104, a fiduciary is required to discharge his/her duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use ..."  Moreover, under 29 U.S.C. §1105, a fiduciary will additionally, or alternatively, be found liable for the breach of fiduciary responsibility of another fiduciary:

> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

Section 1132(a)(3) of the ERISA statute permits an individual plan participant, that is, an employee whose employer offers a disability benefits and/or pension plan, to sue a plan fiduciary for breach of such fiduciary duty.  *Varity Corp. v. Howe*, 516 U.S. 489, 510, 116 S.Ct. 1065, 1076 (1996); *Biomed Pharmaceuticals, Inc. v. Oxford Health Plans (N.Y.), Inc.*, 775 F.Supp.2d 730, 737 (S.D.N.Y.,2011).[3]

---

[3] Because determination of Levin's grievances here requires the Court to interpret §§1022, 1104, 1105, 1113, and 1132 of the ERISA statute, the Court undertakes a *de novo* review of the Record in this connection.

> But Wilkins's SPD claim does not ask us to review either the Fund's exercise of discretion or its interpretation of the *plan.* Rather, we are called on to judge the Fund's compliance with the applicable statute and regulations. To do this, we

4

A plan participant or employee can establish a breach of fiduciary duty by demonstrating that:

> (1) . . .  the defendants were acting in their fiduciary capacities when they made the alleged misrepresentations; (2) . . .  the defendants made a material misrepresentation; and (3) that the plaintiff relied on that misrepresentation to his detriment.' " *Bell v. Pfizer,* 03 Civ. 9945(SC), 2007 U.S. Dist. LEXIS 83714, at \*21, 2007 WL 3355386 (S.D.N.Y. Nov. 8, 2007) (quoting *McDonald v. Pension Plan of the NYSA–ILA Pension Trust Fund,* 153 F.Supp.2d 268, 296 (S.D.N.Y.2001)

*Tocker v. Kraft Foods North America, Inc. Retirement Plan*, 2011 WL 1795811 (S.D.N.Y.) at \*4.

Moreover,

> "Whether or not an individual or entity is an ERISA fiduciary must be determined by focusing on the function performed, rather than on the title held." [citations omitted] . A person or entity is a fiduciary if they (i) exercise discretionary authority, irrespective of whether such authority was ever granted . . .   Further, fiduciary duty claims under ERISA are considered under Rule 8(a)'s "simplified pleading standard," requiring only a "short and plan statement of the claim showing that the pleader is entitled to relief," and not the heightened pleading standard of Rule 9(b).

*Smith v. Stockwell Const. Co., Inc.*, 2011 WL 6208697 (W.D.N.Y.) at \*4.  *See also, Bouboulis v Transport Workers Union of America*, 442 F.3d 55, 63 (2d Cir. 2006).

---

> must construe ERISA's requirement that "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits" be published in the SPD. 29 U.S.C. § 1022(b). In other words, the question before us is simply one of statutory interpretation. And, in such matters, we owe the plan administrators no deference. "The interpretation of ERISA, a federal statute, is a question of law subject to *de novo* review." *Long v. Flying Tiger Line, Inc. Fixed Pension Plan for Pilots,* 994 F.2d 692, 64 (9th Cir.1993), *quoted in Burke v. Kodak Ret. Income Plan,* 336 F.3d 103, 111 (2d Cir.2003).

*Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 581 (2d Cir. 2006).  *See also, Gannon v. NYSA-ILA Pension Trust Fund and Plan*,, 2011 WL 868713 (S.D.N.Y.); *Robinson v. Sheet Metal Workers' National Pension Fund, Plan A*, 441 F.Supp.2d 405 (D.Conn. 2006)

5

Further,

> Communicating information about the contents of a plan is a discretionary responsibility giving rise to a fiduciary obligation. *Bouboulis v. Transport Workers Union of America,* 442 F.3d 55, 65 (2d Cir.2006). Consequently, "when a plan administrator speaks, it must speak truthfully." *Ballone v. Eastman Kodak Co.,* 109 F.3d 117, 123 (2d Cir.1997).

*Bilello v. J.P. Morgan Chase Retirement Plan*, 649 F.Supp.2d 142, 166 (S.D.N.Y. 2009). *See also, Reid v. Local 966 Pension Fund*, 2004 WL 2072086 (S.D.N.Y.) at *4. ("[W]e believe that plan trustees have a general obligation to provide potential plan participants who request plan descriptions with adequate information about the plan.")

Finally,

> "when a plan administrator affirmatively misrepresents the terms of a plan or fails to provide information when it knows that its failure to do so might cause harm, the plan administrator has breached its fiduciary duty to individual plan participants and beneficiaries." *Devlin v. Empire Blue Cross and Blue Shield,* 274 F.3d 76, 88 (2d Cir.2001) (citation omitted). Omissions may also give rise to liability for breach of fiduciary duty. *See Pocchia v. NYNEX Corp.,* 81 F.3d 275, 279 (2d Cir.1996).

*Bilello* at 166. *See also, Devlin v. Empire Blue Cross & Blue Shield,* 274 F.3d 76, 88 (2d Cir.2001) ("... a fiduciary ... has a duty to deal fairly and honestly with its beneficiaries."); *Becher v. Long Island Lighting Co.,* 129 F.3d 268, 271 (2d Cir.1997) ("An ERISA fiduciary has an obligation to provide full and accurate information to the plan beneficiaries regarding the administration of the plan.").

Here, Levin alleges in his First Cause of Action that his direct supervisor, Serafina Cavallo, his senior supervisor, Matthew Mernagh, CS Human Relations representative, Michael Gramer, and an employee of Aon Hewitt, Ilene, all affirmatively misrepresented material terms

of the plan as well as omitted material information[4] regarding STD and LTD benefits available to him, when he sought information from these people about the scope and breadth of benefits available to him.  In so doing, these people, assumed fiduciary status and breached the fiduciary duty imposed upon ERISA fiduciaries to provide plan participants with complete and accurate information about the plan at issue.  Levin relied upon this information and did not apply for either STD or LTD benefits, believing that to do so would be futile inasmuch as he was not eligible to receive them.

Levin alleges in his Second Cause of Action that because the SPD fails to include material information, fails to be written in sufficiently clear terms so that Levin was reasonably apprised of his rights and obligations under the plan, was knowingly distributed to Levin, and was willfully misinterpreted by the defendants, that a fiduciary duty was breached under 29 U.S.C. §1022(a).  On page 6 of the ASA, CS is acknowledged as the entity responsible for drafting the SPD.[5]

Specifically, Levin alleges in his complaint that the SPD contains certain specific material omissions (paragraphs 11 - 20)[6] and that he was explicitly told that certain terms did not

---

[4] "An employer's conduct need not rise to the level of knowing misrepresentation in order to constitute a breach of its fiduciary duties under ERISA. Rather, "fiduciary duties can also be breached by ... negligent material misrepresentations." Bell, 499 F .Supp.2d at 410-11 (S.D.N.Y.2007) (citing Estate of Becker v. Eastman Kodak Co., 120 F.3d 5, 10 (2d Cir.1997))." *Burns v. Marley Co. Pension Plan for Hourly Employees at Stockton, Cal.*, 2009 WL 1193474 (E.D.N.Y.) at *5.

[5] "Upon Customer request, MetLife will provide a copy of a sample insured STD certificate to the Customer for use *as a guide to drafting the Customer's SPD."*  (emphasis added.)

[6] The complaint, at pars. 11 -20, read in its most favorable light, alleges that the SPD materially omits information and provides certain examples of information that should have been included in the SPD but was not.  Levin argues herein that, in addition to these omissions, this Court should also consider that the SPD does not mention the following crucial issues and/or provide answers to the following questions:

7

apply to him, when, in fact, such terms did and do apply to his situation (paragraphs 41 -53)[7].

Levin relied upon this information and did not apply for either STD or LTD benefits, believing that to do so would be futile inasmuch as he was not eligible to receive them. [8]

---

1. If an (exempt) employee does not apply for STD benefits, is he/she nonetheless eligible to apply for LTD benefits?

2. Under what circumstances is a New York exempt employee eligible for only $20 per week in STD benefits?

3. Under what circumstances is a New York exempt employee eligible for $170 per week in STD benefits?

4. Are there any circumstances where a New York exempt employee is not eligible for any amount of STD benefits?  (other than the exceptions listed on page 12 of the SPD)

5. Does an (exempt) employee automatically start the "easy claim application process" for STD benefits when he/she calls 1-888-325-2732?   If not, how does an (exempt) employee start the "easy claim application process"?

6. Can a claim for STD benefits be commenced without filing a CS/MetLife STD claim form?

7. Under what circumstances is a CS/MetLife STD claim form provided to an exempt employee?

8. To whom is a CS/MetLife claim form for STD benefits sent?

9. How does an (exempt) employee contact the claims administrator?

10. Who is responsible for actually applying for New York State Worker's Compensation benefits on behalf of an (exempt) employee who has been found eligible to receive STD benefits?

[7]   Levin notes that on page 41 of the SPD it states, in relevant part, that "MetLife is the administrator for claims and appeals for the STD Plan, *including any state-provided benefits available to employees who work in ... New York, . . .*"   (emphasis added.)

Levin was given no information as to how CS, Hewitt, or MetLife would administer these NY Worker's Compensation benefits.  In contradiction, he was told that he would be responsible for eventually applying for Worker's Compensation benefits.  (Paragraphs 45 - 47 of the complaint.)

Levin's First and Second Causes of Action, therefore, when viewed in their most favorable light, sufficiently demonstrate that CS and Hewitt were acting in a fiduciary capacity when each made its various misrepresentations and/or omissions in connection to the Plan, that the misrepresentations and omissions made were material and that Levin relied upon these misrepresentations and omissions to his detriment.

CS and Hewitt argue in their MemSupp that neither entity can be held liable for any fiduciary breach because (1) Levin's claims are time barred, (2) his claim for "monetary damages for himself alone" is not relief available under ERISA, (3) the statements of CS and/or Hewitt were oral promises which cannot be utilized to demonstrate a fiduciary breach, and (4) that neither the CS nor Hewitt employees' identified by Levin were fiduciaries under the Plan.  Not one of these arguments has merit.

CS/Hewitt asserts that Levin "expressly alleges that he had actual knowledge of the facts underlying the breach in March 2008."  However, nowhere in the complaint does Levin so "expressly acknowledge" that he knew in 2008 that the information he received was incorrect. In contradistinction,  Levin affirmatively alleges that in 2008  he "believed he had no options available to him" in connection with his receipt of disability benefits.

The fact that Levin may have been in possession of the SPD in 2008 cannot be utilized to even arguably demonstrate that Levin understood the information contained therein.  Under an ERISA Plan,  the employee is always encouraged to ask questions of a fiduciary in the event he/she does not understand his/her rights or obligations under the SPD.  And the "fiduciary so designated in the SPD to whom the employee is directed to so question" has the affirmative obligation to provide complete and accurate information in response.  For example, in the SPD

---

[8]   *See, e.g.,*  Paragraph 53 of the complaint: "Believing he had no options available to him, Levin continued working full time."

here, on pages 39 and 42, the employee is advised to, respectively "contact the plan administrator" or the "Credit Suisse Benefits Service Center" (at 1-888-325-2732) if the employee has any questions about the Plan.

Here, again, Levin alleges that he did just that. He asked his supervisors whom he should call and was told to call the telephone number provided in the SPD. And in such an instance, the Second Circuit finds in *Estate of Becker v. Eastman Kodak Co.*,120 F.3d 5 (2d Cir. 1997) at *10, that a "benefits counselor" is liable if the information he/she provides adds to rather than ameliorates an employee's confusion about eligibility and scope of benefits. ("Regardless whether the SPD was, by itself, so ambiguous and incomplete as to violate § 1022(b), we find that benefits counselor Ticen exacerbated the lack of clarity inherent in the SPD and thereby provided Becker with materially misleading information.").

Accordingly, then, CS's/Hewitt's assertion that Levin's claim is time barred, under *Caputo v. Pfizer, Inc.*[9] because Levin was in possession of all the facts necessary to constitute a claim misconstrues this holding as well as misconstrues the complaint's allegations. What the *Caputo* Court actually finds is that "[t]he disclosure of a transaction that is not inherently a statutory breach of fiduciary duty ... cannot communicate the existence of an underlying breach." (quoting *Fink v. National Sav. & Trust Co.,* 772 F.2d 951, 957 (D.C.Cir.1985)). and, that, therefore, "it is not enough that [plaintiffs] had notice that something was awry; [plaintiffs] must have had specific knowledge of the actual breach of duty upon which [they sued]." (quoting *Brock v. Nellis,* 809 F.2d 753, 755 (11th Cir.1987)). *Id.* at 193. But, here, Levin indisputably did not know he was eligible to receive either STD or LTD benefits in 2008 and therefore cannot be found to have been in possession of all the facts necessary to constitute a claim.

---

[9] 267 F.3d 181 (2d Cir. 2001)

Next CS/Hewitt argue under *Mass.Mut. Life Ins. Co v. Russell*[10] as well as *Coan v. Kaufman*[11] as well as *Dudick v. Kaszycki & Sons Contractors, Inc.*[12], that Levin cannot obtain monetary relief under 29 U.S.C. §1132(a)(3).

The fatal problem with applying *Russell* in this connection is that *Russell* deals with a claim under 29 U.S.C. §1132(a)(2), not 29 U.S.C. §1132(a)(3). Sections 1132(a)(2) as well as 1109(a) concern a fiduciary's responsibility "to make good to such [disability or pension] plan any losses *to the plan* resulting from each such breach, and to *restore to such plan* any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary ..." 29 U.S.C. §1109(a).  (emphasis added.)

Here, however, Levin is not concerned with restoring to the CS disability plan any lost profits or misused funds.  He is concerned only with demonstrating that the defendants breached their, respective, fiduciary duties that he claims are personally due to him under the ERISA statute.  Therefore CS's/Hewitt's reliance upon *Russell* is misplaced as is its assertion that because Levin "makes no effort to align his cause with that of other Plan participants" he has not viably articulated a claim under 29 U.S.C. §1132(a)(3).  Again, under 29 U.S.C. §1132(a)(3), Levin is under no obligation to make any such assertion.

The problem with *Coan's* relevance is that, there, the Court finds that the relief Coan seeks is not equitable in nature.  But, here, the relief Levin seeks is equitable in nature.

Levin's complaint seeks reimbursement for the health care insurance that Levin had to buy when the health insurance benefits available to him as a CS employee lapsed upon his resignation from the company as well as for his out of pocket medical expenses that his CS

---

[10]  473 U.S. 134 (1985)

[11]  457 F.3d 250 (2d Cir. 2006)

[12]  974 F.2d 270 (2d Cir. 1992)

health insurance plan would have paid for but that was not available to him under the private health insurance plan he was able to secure. Had Levin been granted STD and/or LTD benefits his CS medical insurance would have continued.[13]

Levin additionally demands to be reimbursed for all the costs and expenses (other than attorney's fees which he has separately demanded and which are not at issue here) attendant with his prosecution of this lawsuit.

In other words, Levin, here, is seeking "restitution" which is defined in BLACK'S LAW DICTIONARY, Fifth Edition, West Publishing Co., 1979, as follows:

> <u>Restitution</u>: Act of restoring; restoration; restoration of anything to its rightful owner; the act of making good or giving equivalent for any loss, damage or injury; and indemnification ... Restoration of the status quo and *is amount which would put plaintiff in as good a position as he would have been* .... A person who has been unjustly enriched at the expense of another is required to make restitution to the other. Restatement of the Law, Restitution §1. (emphasis added.)

It is apparent, then, that restitution is an equitable remedy and is available to Levin under section 1132(a)(3). *See, e.g., Cigna Corp. v. Amara*, 131 S.Ct. 1866, 1878 (2011):

> We have interpreted the term "appropriate equitable relief" in § 502(a)(3) as referring to " 'those categories of relief' " that, traditionally speaking ( *i.e.,* prior to the merger of law and equity) " 'were *typically* available in equity.' " *Sereboff,* 547 U.S., at 361, 126 S.Ct. 1869 (quoting *Mertens,* 508 U.S., at 256, 113 S.Ct. 2063).

And, finally, the problem with utilizing *Dudick* here is that, there, the Court finds that punitive damages are not available under 29 U.S.C. §1109(a). Not only is 29 U.S.C. §1109(a), a section of the ERISA statute with which Levin is unconcerned, but nowhere in his complaint, in any connection, does he seek punitive damages. Therefore, CS's/Hewitt's arguments that the

---

[13] See page 28 of the SPD, annexed as Exhibit C to the MetLife motion.

12

relief Levin seeks under 29 U.S.C. §1132(a)(3) is unavailable to him are inapposite and unpersuasive.

Next CS/Hewitt argue that Levin's fiduciary breach claims cannot survive because they are based upon "oral misrepresentations" by CS and/or Hewitt employees. Their reliance upon *Ladouceur* and *Perreca* is misplaced.[14] Its reliance upon *Bowerman v. Wal-Mart Stores, Inc.*[15] is puzzling. Aside from the fact that this is a Seventh Circuit case, the *Bowerman* Court does not

---

[14] In *Ladouceur*, Credit Lyonnais merged with one of its subsidiaries, Credit Lyonnais Rouse. Before the merger, the plaintiffs met with a Credit Lyonnais Human Resources Director who allegedly orally advised them that their pension benefits would be calculated as of 1987, the date they began employ at Rouse as opposed to 2001, the date of the merger. After these plaintiffs resigned eight months after the merger, they learned that their pension benefits were going to be calculated as of 2001. Credit Lyonnais denied that it had ever represented otherwise. The Second Circuit found that because there was a written benefits plan governed by ERISA, that plaintiffs allegations of an oral modification of these written terms had to be supported by a writing supporting the alleged oral modification. Absent such additional writing their claims of breach of fiduciary duty were unenforceable and insufficient as a matter of law to demonstrate such breach.

Here, though, Levin does not allege that any fiduciary "modified" or purported to change any term of the CS plan. Rather, he alleges that these fiduciaries affirmatively misrepresented the written terms of the plan and/or obfuscated them and/or omitted to tell him about them. For purposes of deciding this motion, the facts underlying these assertions should be deemed to be true. MetLife's characterization of the "facts" should not be given weight for purposes of a motion to dismiss.

Similarly, in *Perreca*, the plaintiffs there also relied upon an ostensible oral promise that their pension benefits began to accrue in 1959. The Court holds that "oral promises are unenforceable under ERISA and therefore cannot vary the terms of an ERISA plan." *Id.* at 225. The *Perreca* plaintiffs were, therefore, left with the sole task of proving at trial that the express language of the plan at issue would permit Perreca's pension benefits to be calculated from August 1, 1959 and were not given the opportunity to present evidence of the oral promise.

Again, here, Levin does not rely upon any oral promise. He alleges that he relied upon misrepresentations of the terms of the written plan and/or upon material omissions of particular terms of the plan. Just as Perreca was given the opportunity to prove at trial that the express terms of the plan stated that pension benefits would accrue from 1959, Levin, here, too, should be given the opportunity to prove at trial that the written terms of the plan were affirmatively misrepresented to him.

[15]   226 F.3d 574 (7th Cir. 2000)

issue any holding which weakens Levin's allegations. Levin alleges that the SPD materially omits information, fails to accurately or comprehensively apprise Levin of his rights and obligations thereunder, and obfuscates material information in the plan. (Paragraphs 11 - 20, 83 and 84). While the *Bowerman* Court may find that when the terms of the written plan are accurate and clear, that verbal bad advice is insufficient to vary the written terms (akin to the Second Circuit holdings in *Ladouceur* and *Perreca)*, it simultaneously holds that when the Plan's terms are ambiguous or where one party has made misleading statements to a claimant (which that claimant relies upon to his detriment) or where one party prevents the other party from performing a condition precedent, that an employer is equitably estopped from denying coverage:

> We think that the district court was on solid ground in deciding that the 1995 SPD and the other Plan documents insufficiently explained the need for employees like Ms. Bowerman, who were rehired by Wal-Mart after a brief hiatus, to obtain COBRA coverage through the Plan.

*Id.* at 587. And that is exactly what Levin alleges here. He alleges that the material omissions in the SPD as well as its various obfuscations and the misinterpretations provided by CS and Hewitt prevent either defendant from denying liability. Levin does not allege that CS and/or Hewitt orally modified the plan. He alleges that both defendants affirmatively misrepresented the terms of the plan when each was under a duty to provide full and complete information.

Finally, CS argues that Levin's First and Second Causes of Action must fail because neither CS nor Hewitt's employees were fiduciaries under the plan nor were they acting as fiduciaries under the plan. However,

> "Whether or not an individual or entity is an ERISA fiduciary must be determined by focusing on the function performed, rather than on the title held." [citations omitted] . A person or entity is a fiduciary if they (i) exercise discretionary authority, irrespective of whether such authority was ever granted . . . Further, fiduciary duty claims under ERISA are considered under Rule 8(a)'s "simplified

14

> pleading standard," requiring only a "short and plan statement of the claim showing that the pleader is entitled to relief," and not the heightened pleading standard of Rule 9(b).

*Smith v. Stockwell Const. Co., Inc.*, 2011 WL 6208697 (W.D.N.Y.) at *4. *See also, Bouboulis v Transport Workers Union of America*, 442 F.3d 55, 63 (2d Cir. 2006).

Here, however, it is indisputable that both CS and Hewitt (purported) to provide Levin with material information about the disability plan. Such action is deemed to be fiduciary in nature. *Bilello v. J.P. Morgan Chase Retirement Plan*, 649 F.Supp.2d 142, 166 (S.D.N.Y. 2009) And the representative providing such information is under a duty to speak completely and honestly, regardless of the title given to such representative. It is likewise indisputable that both CS and Hewitt provided Levin with inaccurate information or, at very least, egregiously incomplete information.

Accordingly, at this pleading stage, Levin's First and Second Causes of Action against the defendants should be deemed plausible and CS's/Hewitt's motion to dismiss these claims against them should be denied.

<u>Conclusion</u>

For the foregoing reasons, CS's/Hewitt's motion to dismiss Levin's First and Second Causes of Action should be denied in its entirety.

Dated: New York, NY
April 2, 2012

                                                    Respectfully submitted,

                                                    /s/Harriette Boxer
                                                    _____
                                                    HARRIETTE N. BOXER
                                                    Attorney for Plaintiff, Stanislav Levin
                                                    31 East 32nd Street, Suite 300
                                                    New York, NY 10016