UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

───────────────

No. 11 Civ. 5252 (RJS)

───────────────

STANISLAV LEVIN,

Plaintiff,

VERSUS

CREDIT SUISSE, INC., *et al.*,

Defendants.

───────────────

MEMORANDUM AND ORDER
March 18, 2013

───────────────

RICHARD J. SULLIVAN, District Judge:

Plaintiff Stanislav Levin, a former employee of Credit Suisse, Inc. ("CS"), brings this suit against CS, Aon Hewitt, Inc. ("Aon"), and Metropolitan Life Insurance Co. ("MetLife"), alleging various violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002 *et seq.*, arising out of MetLife's denial of his application for long-term disability benefits. Before the Court are Defendants' motions to dismiss the Second Amended Complaint ("SAC"). For the reasons that follow, Defendants' motions are granted in their entirety.

I. BACKGROUND

A. Facts

Plaintiff began working for CS in 1998 as an independent contractor, and in 2003 CS hired him as a regular employee. (SAC ¶ 34.)[1] His last job title before leaving CS was Assistant Vice President – Systems Analyst. (*Id.* ¶ 36.) As part of its ERISA Plan (the "Plan"), CS provides its employees

---

[1] The following facts are drawn from the SAC. In ruling on the instant motion, the Court has considered MetLife's brief in support of its motion ("MetLife Mem."); Plaintiff's opposition brief ("Pl.'s MetLife Opp'n"); MetLife's reply ("MetLife Reply"); CS and Aon's brief in support of their motion ("CS Mem."); Plaintiff's opposition brief ("Pl.'s CS Opp'n"); CS and Aon's reply ("CS Reply"); and the various declarations and exhibits accompanying these documents. Additionally, the Court has reviewed documents relating to CS's ERISA Plan, which are incorporated by reference into the SAC. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (stating that when considering a motion to dismiss pursuant to Rule 12(b)(6), a district court may consider documents incorporated by reference in the complaint and documents upon which the complaint relies heavily, so long as there is no dispute as to the authenticity of the documents).

1

with a long-term disability insurance policy, which is issued by MetLife. (*Id.* ¶ 7.) MetLife also administers claims and appeals under the Plan. (*Id.* ¶ 25.) Aon acts as the benefits administrator for the Plan. (*Id.* ¶ 4.)[2]

In October 2007, Plaintiff was diagnosed with a repetitive strain injury. (*Id.* ¶ 37.) On March 14, 2008, Plaintiff called the claims hotline described in the CS Summary Plan Description ("SPD") and spoke with an Aon employee, whom he recalled only as "Ilene." (*Id.* ¶ 43.) During that conversation, Ilene incorrectly advised him that he was not eligible for short-term disability ("SD") benefits and that, although he could apply for them, he would definitely be denied. (*Id.* ¶¶ 43-45.) She also incorrectly told Plaintiff that the workers' compensation program run by New York State was separate from CS's SD policy and that getting approved could be very difficult. (*Id.* ¶¶ 46-47.) Ilene did not discuss, nor it seems did Plaintiff ask about, long-term disability ("LD") benefits. (*See id.* ¶¶ 48-49.) Plaintiff described this conversation to his CS supervisors, Serafina Cavallo and Matthew Mernagh, and to a CS human resources employee, Michael Gramer. (*Id.* ¶¶ 50-51.) Gramer advised him that whatever Aon told him was correct. (*Id.* ¶ 51.)

Plaintiff left CS on June 8, 2008 because his injuries left him unable to work. (*Id.* ¶ 54.) Plaintiff never filed a SD benefits claim, but applied for and received New York State Workers' Compensation on an unspecified date. (*Id.* ¶ 55.) Plaintiff did not file a LD benefits claim until early 2010.

(*Id.* ¶¶ 56-57.) MetLife denied his request for benefits as untimely on July 22, 2010, and denied his appeal on March 1, 2011. (*Id.* ¶¶ 58-59.)

### B. Procedural History

Plaintiff initiated this action on July 28, 2011, alleging that MetLife wrongly denied his LD benefits and that all three Defendants acted in bad faith and breached their fiduciary duties under ERISA. (Doc. No. 1.) Plaintiff filed his SAC on January 25, 2012. (Doc. No. 24.) Defendants filed the instant motions on March 9, 2012 (Doc. Nos. 29, 31), which were fully submitted on April 19, 2012 (Doc. Nos. 40, 41). The Court held oral argument on May 15, 2012.

## II. DISCUSSION

### A. Legal Standard

Rule 8(a) of the Federal Rules of Civil Procedure provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In order to survive a motion to dismiss, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, LD.*, 493 F.3d 87, 98 (2d Cir. 2007). Plaintiffs must also allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. However, that tenet "is inapplicable to legal

---

[2] CS and Aon filed joint briefs, are represented jointly, and do not appear to contend that they had distinct roles in the events giving rise to this action or that there is any difference with respect to their potential respective liability in this matter.

conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id*. at 570.

### B. Fiduciary Duty Claims (Claims 1-3)

Plaintiff brings three separate claims against Defendants for breaching fiduciary duties under ERISA. Defendants seek to dismiss each of those claims on two grounds. First, Defendants argue that each claim fails to allege facts establishing a cause of action for breach of fiduciary duty. Second, they maintain that even if Plaintiff adequately pleaded his claims, the relief he seeks is inappropriate and unavailable given the equitable nature of fiduciary duty claims. The Court will consider each ground for dismissal with respect to each of the first three causes of action.

#### 1. Claim 1

In his first claim for relief, Plaintiff alleges that CS, Aon, and MetLife breached their fiduciary duty to Plaintiff by providing inaccurate information about his Plan benefits. (SAC ¶¶ 64-67.) To state a claim for breach of a fiduciary duty under ERISA based on a material misrepresentation or omission, a plaintiff must allege that (1) the defendant "was acting as a fiduciary . . . when taking the action subject to complaint"; (2) the defendant's conduct "breached a fiduciary duty"; and (3) the plaintiff detrimentally relied on the defendant's material misrepresentation or omission. *Bell v. Pfizer, Inc.*, 626 F.3d 66, 73-75 (2d Cir. 2010).

Plaintiff's claim fails with respect to both CS and Aon because Plaintiff does not adequately allege detrimental reliance. Plaintiff's claim, and the relief sought therein, focuses solely on the alleged wrongful denial of his *LD* benefits. The material misrepresentations he identifies, however, related only to SD benefits (*see* SAC ¶¶ 43-51), and he has not alleged facts giving rise to a plausible inference that that misinformation caused him to delay his application for LD benefits.[3]

With respect to CS only, Plaintiff's claim fails for two other, independently sufficient reasons. First, as a matter of law, CS was not acting as an ERISA fiduciary when its employees provided Plaintiff with misleading information. A person is an ERISA fiduciary only to the extent that he exercises discretionary authority respecting management or administration of a plan, *see Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996) (quoting 29 U.S.C. § 1002(21)(A)), whereas individuals who participate in merely "ministerial" tasks such as advising participants of their rights are not plan fiduciaries, *see* 29 C.F.R. § 2509.75-8; *Tocker v. Kraft Foods N. Am. Inc. Ret. Plan*, No. 11-2445-cv, 2012 WL 3711343, at *2 (2d Cir. Aug. 29, 2012) (finding that a "Benefits Administration Manager" whose responsibilities included supervising staff who "answered employee [benefit]

---

[3] Because Plaintiff has failed to state a claim for breach of fiduciary duty relating to his LD benefits, the Court need not reach the question of whether Aon was acting as a fiduciary by setting up a hotline that provided misleading information. *Compare* 29 C.F.R. § 2509.75-8 (stating that individuals who advise plan participants of their rights and options under a plan are not fiduciaries) *with Varity Corp.*, 516 U.S. at 498-502 (finding that employer and administrator acted as fiduciary where it provided employees with misleading materials and presentations about their future eligibility for benefits).

3

questions" and "ensured that employees received benefit information and enrollment materials" performed only "ministerial tasks" and thus was not an ERISA fiduciary). Cavallo, Mernagh, and Gramer were Plaintiff's supervisors and an HR employee, respectively, and Plaintiff can cite no reason why CS employees who have no apparent connection to the Plan would have an affirmative duty to investigate Plaintiff's claims about what Aon told him.

Second, to the extent Plaintiff can establish that CS, through Cavallo, Mernagh, and Gramer, was acting as a fiduciary, he still has not adequately alleged any *breach* of fiduciary duty that would establish his entitlement to the relief requested here. Plaintiff alleges only that Cavallo, Mernagh, and Gramer did not *volunteer* useful information about applying for LD benefits. However, Plaintiff is unable to identify any legal principle establishing a duty of those employees to do anything other than respond to the questions put to them.

Finally, with respect to MetLife, Claim 1 fails because it is duplicative of Claim 5. Claim 1 alleges that MetLife breached its fiduciary duty "by denying [Plaintiff's] application for his [LD] benefits without undertaking a responsible investigation." (SAC ¶ 68.) Claim 5 alleges that MetLife arbitrarily and capriciously denied his benefits. (*Id.* ¶ 143.) Because these claims are coextensive, dismissal of Claim 1 as against MetLife is appropriate. *See Del Greco v. CVS Corp.*, 337 F. Supp. 2d 475, 487 (S.D.N.Y. 2004) (noting that "[t]he Supreme Court has held that § 1132(a)(3) only comes into play where other portions of ERISA's civil enforcement scheme do not provide a remedy for the beneficiary's injury" (citing *Varity Corp.*, 516 U.S. at 513-14)).

2. Claim 2

Plaintiff's second cause of action, which alleges that Defendants breached their fiduciary duties by failing to provide Plaintiff with an accurate and comprehensive SPD (SAC ¶¶ 80-84), fails for the same reason as his first: although Plaintiff alleges that the SPD contained material omissions (*see id.* ¶¶ 11-20), he does not plead any facts setting forth a plausible theory as to how those omissions related to the harm alleged.

For claims arising from misleading or inaccurate SPDs, the Second Circuit does not require a party to establish detrimental reliance. *See Burke v. Kodak Ret. Income Plan*, 336 F.3d 103, 112-13 (2d Cir. 2003). Rather, it requires only a showing of "prejudice," which a party may satisfy by demonstrating that "a plan participant or beneficiary was *likely* to have been harmed as a result of a deficient SPD." *Id.* at 113.

In this action, Plaintiff does not allege that he relied on or even read the SPD in connection with his decision not to timely file for SD or LD benefits. Indeed, Plaintiff does not directly assert that he even had the SPD. Instead, he alleges "[o]n information and belief" that it was in his possession (SAC ¶ 42) – a pleading form usually reserved for the activities and motivations of people other than the plaintiff. Given that Plaintiff does not claim to have even read the SPD, he cannot establish a likelihood that he was harmed by the various deficiencies in the SPD that the SAC identifies.

Moreover, although Plaintiff offers many suggestions as to how the SPD could have been improved, he does not allege that such information was actually required by statute. Accordingly, Plaintiff has not plausibly alleged that Defendants' failure to

4

provide him with a useful SPD was the cause of his failure to timely file for LD benefits.

Beyond failing to adequately allege prejudice, Claim 2 also wrongly includes MetLife as a defendant because Metlife was not a fiduciary for purposes of the conduct complained of in this claim: namely, drafting and disseminating the SPD. As noted above, an entity is an ERISA fiduciary only to the extent that it exercises discretionary authority respecting management or administration of a plan. *See* 29 U.S.C. § 1002(21); *Varity Corp.*, 516 U.S. at 498; *In re Citigroup ERISA Litig.*, 662 F.3d 128, 135 (2d Cir. 2011) ("[A] person may be an ERISA fiduciary with respect to certain matters but not others. Therefore, in suits alleging breach of fiduciary duty, the threshold question is whether the defendants were acting as fiduciaries when taking the action subject to complaint." (internal quotation marks and citations omitted)). Thus, although MetLife was a Plan fiduciary insofar as it exercised discretionary authority in its determination of claims for benefits under the Plan, it was not a fiduciary with respect to elements of the Plan it did not manage or administer. To accept Plaintiff's sweeping theory of fiduciary duty would impose on MetLife not only the obligation to fairly administer claims but also to affirmatively monitor – and even interfere with – the activity of all other parties involved in the Plan. The Court declines to adopt such a theory. *See Gearren v. McGraw-Hill Cos., Inc.*, 660 F.3d 605, 611 (2d Cir. 2011) ("ERISA . . . only holds fiduciaries liable to the extent that they were 'acting as a fiduciary . . . when taking the action subject to the complaint.'" (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000))). In any event, if CS and Aon's failure to provide Plaintiff with an accurate SPD affected his application for LD benefits and MetLife improperly failed to take that fact into account, that claim is covered by Plaintiff's § 1132(a)(1)(B) claim against MetLife for wrongful denial of benefits.

Because Plaintiff has failed to state a claim that Defendants breached their fiduciary duties by failing to provide him with a complete and accurate SPD, and because that claim in any event would be duplicative of Claim 5, the Court dismisses Claim 2.

3. Claim 3

In his third cause of action, Plaintiff alleges that MetLife breached its fiduciary duties to him by failing to (1) "have mechanisms in place that would correct the misinformation that [Plaintiff] received"; (2) deliver a claim form; and (3) "apply for and/or administer [Plaintiff's] claim." (SAC ¶¶ 107, 109-110, 112.) Since Plaintiff did not file a claim and alleges no other basis for believing that MetLife knew of his illness, the implication of this claim is that MetLife was obligated to seek out all CS employees who might be ill and initiate claims for them. In fact, however, MetLife's fiduciary duty was limited to its role as the claims administrator, in which it decided claims submitted to it. The Court declines to expand MetLife's fiduciary duty in ways not supported by the statutory language. Moreover, to the extent that Plaintiff's claim against MetLife is adequately pled, it overlaps with his § 1132(a)(1)(B) claim for denial of benefits. (*Id.* ¶¶ 121-122.) Accordingly, the Court dismisses Claim 3.

4. Proper Remedies in Fiduciary Duty Claims

In addition to arguing that Claims 1-3 fail to adequately state fiduciary duty claims, Defendants maintain that the claims must be dismissed for seeking inappropriate

forms of relief. Defendants' argument turns on the equitable nature of the cause of action for breach of fiduciary duty. Notwithstanding Plaintiff's incorrect citation to 29 U.S.C. §§ 1104 and 1105 as the statutory sources of this cause of action (*id.* ¶¶ 71, 84), his fiduciary duty claims in fact arise under 29 U.S.C. § 1132(a)(3).[4] *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (identifying 29 U.S.C. § 1132(a) as ERISA's "integrated," "comprehensive," and "exclusive" enforcement mechanism); *Varity Corp.*, 516 U.S. at 492 (holding that individuals may sue for breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(3)). That provision entitles participants in ERISA plans to "appropriate equitable relief" for violations. 29 U.S.C. § 1132(a)(3). Two important consequences flow from grounding the cause of action for breach of fiduciary duty in § 1132(a)(3). First, the only appropriate remedies for such fiduciary duty claims are equitable. *See Bell*, 626 F.3d at 73. And second, in keeping with the usual limits on equitable relief, "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief." *Varity Corp.*, 516 U.S. at 515.

In this case, Plaintiff seeks identical remedies for each of his three breach of fiduciary duty claims: (1) LD benefits from December 20, 2008 to date plus interest, pursuant to 29 U.S.C. §§ 1132(a)(1)(B), (a)(3), and (c)(1)(B); (2) future LD benefits, pursuant to the same provisions; (3) attorney's fees, pursuant to 29 U.S.C. § 1132(g)(1); (4) reimbursement for out-of-pocket medical expenses, pursuant to 29 U.S.C. §§ 1132(a)(1)(B), (a)(3), and (c)(1)(B); (5) reimbursement of costs associated with this lawsuit, pursuant to the same statutory provisions; and (6) damages, pursuant to 29 U.S.C. § 1132(c)(1)(B). These demands for relief are problematic for several reasons.

First, Plaintiff's claims for benefits, costs, and fees duplicate the relief demanded in his wrongful denial of benefits claim. Were Plaintiff to prevail on that latter claim, he would be entitled to past and future LD benefits and, potentially, costs and fees. *See* 29 U.S.C. § 1132(a)(1)(B) (providing cause of action for individual to recover past benefits and enforce rights under the plan); *id* § 1132(g) (permitting court to award costs and reasonable attorneys' fees to prevailing party). Because ERISA specifically provides the very remedies Plaintiff seeks in connection with his fiduciary duty claims, equitable relief is unavailable for those claims and those claims must be dismissed. *Del Greco*, 337 F. Supp. 2d at 487-88 (dismissing claims that duplicated claim for recovery of benefits), *aff'd*, 164 F. App'x 75 (2d Cir. 2006); *see also Biomed Pharms., Inc. v. Oxford Health Plans (N.Y.), Inc.*, 775 F. Supp. 2d 730, 738 (S.D.N.Y. 2011) (holding that where the gravamen of a claim is that the defendant "failed to follow proper procedures in denying [a patient's] claim for benefits . . . under the terms of the [p]lan, adequate relief for these claims is plainly available under [§ 1132(a)(1)(B)]").

Second, Plaintiff's demand for benefits and out-of-pocket expenses is also clearly not equitable and thus improper under 29 U.S.C. § 1132(a)(3). *See Hall v. Kodak Retirement Income Plan*, 363 F. App'x 103,

---

[4] ERISA explicitly provides a cause of action for breach of fiduciary duty where the breach results in losses to the plan. *See* 29 U.S.C. § 1109 (establishing that breaching fiduciaries are "personally liable to make good to such plan any losses to the plan resulting from each such breach"); *id.* § 1132(a)(2) (creating a private cause of action for violations of § 1109). However, Plaintiff does not allege any breaches of fiduciary duty resulting in losses to the ERISA Plan. Thus, § 1132(a)(2) does not provide a basis for Plaintiff's breach of fiduciary duty claims.

107 (2d Cir. 2010) ("To the extent [the plaintiff's] claim is that she is entitled to an annuity pursuant to the terms of the Plan because Defendants failed to give her husband proper notification of his options in 1992, such relief is clearly legal rather than equitable and is therefore not available under [29 U.S.C. § 1132(a)(3)]."). The fact that Plaintiff attempts to style this demand as seeking "restitution" does not alter the analysis. *See Del Greco*, 337 F. Supp. 2d at 488 (dismissing fiduciary duty claim for restitution of overpaid funds because "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession" (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002))).

Finally, although Plaintiff attaches a claim for damages under 29 U.S.C. § 1132(c)(1)(B) to each cause of action, such damages appear to be inapplicable to the injury alleged here. Specifically, such damages cover instances in which an administrator "fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within [thirty] days after such request." 29 U.S.C. § 1132(c)(1)(B). Although Plaintiff has alleged that he was given misinformation through Aon's hotline and that he is dissatisfied with the amount of information provided in the SPD, he has nowhere alleged that he requested information and that any Defendant refused to mail it to him. The Court declines to extend the reach of § 1132(c)(1)(B) beyond its very narrow statutory language.

Accordingly, the fact that Plaintiff seeks remedies that are duplicative of those sought in other causes of action and that are legal, not equitable, in nature creates an alternative ground for the Court to dismiss Plaintiff's fiduciary duty claims.

\*   \*   \*

Because Plaintiff fails to state claims for breach of fiduciary duty and seeks inappropriate remedies for those alleged breaches, the Court dismisses Claims 1-3.[5]

### C.   Bad Faith (Claim 4)

In his fourth cause of action, Plaintiff alleges that all three Defendants acted in "bad faith" in denying Plaintiff's benefits. Once again, Plaintiff does not identify the statutory source of this cause of action.

If Plaintiff's bad-faith claim arises under state law, it should be dismissed because ERISA preempts such state law claims. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54, 57 (1987); *see also Estate of Spinner v.*

---

[5] Defendants also argue that Plaintiff's fiduciary duty claims are untimely because Plaintiff was in possession of the facts forming the basis of his claim more than three years before initiating this action. *See* 29 U.S.C. § 1113(2) (establishing a three-year statute of limitations commencing from the date when a plaintiff had knowledge of a breach of fiduciary duty); *Young v. Gen. Motors Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 418-19 (S.D.N.Y. 2008) ("[W]here the alleged breach stems from a transaction that a plaintiff claims is inherently a statutory breach of fiduciary duty, knowledge of the transaction standing alone may be sufficient to trigger the obligation to file suit." (internal quotation marks omitted)). Specifically, Defendants contend that since Plaintiff has had the SPD since at least 2008, he was or should have been aware that Defendants made misleading statements at that time. Implicit in this argument is the proposition that Plaintiff's reliance on an oral statement that conflicts with the SPD or the Plan is *per se* unreasonable. Because Plaintiff's claims can be resolved on other grounds, however, the Court need not decide that proposition's validity.

*Anthem Health Plans of Va., Inc.*, 388 F. App'x 275, 278 (4th Cir. 2010) ("[I]t is settled law . . . that ERISA preempts common law claims of estoppel and bad faith."). Under ERISA, bad faith appears, at most, to be a consideration in determining whether damages should be awarded, *see, e.g.*, *Cherry v. Toussaint*, 50 F. App'x 476, 478 (2d Cir. 2002), and is not a separate cause of action. As such, bad faith is best understood not as a stand-alone claim but as another reason why Plaintiff asserts he should prevail against MetLife on his fifth cause of action for denial of benefits. Accordingly, Plaintiff's fourth cause of action is dismissed.

### D. Arbitrary & Capricious Denial of Benefits (Claim 5)

Plaintiff alleges in his fifth cause of action that MetLife arbitrarily and capriciously denied his application for LD benefits, in violation of 29 U.S.C. § 1132(a)(1)(B). Plaintiff does not dispute that his claim was untimely but argues that MetLife erred in denying his claim because CS and Aon misled him about his benefits. MetLife argues that this claim should be dismissed because (1) it is based on an unenforceable oral modification of the Plan; (2) Plaintiff does not allege any misrepresentation with respect to the LD plan; and (3) Plaintiff has failed to allege adequately that the SPD was ambiguous. The Court will consider each of these arguments in turn.

Although oral modifications of written ERISA plans are not enforceable, *Smith v. Dunham-Bush, Inc.*, 959 F.2d 6, 9 (2d Cir. 1992), MetLife's reliance on that principle misses the mark. Here, Plaintiff does not actually allege that there was an "oral modification" of CS's disability benefits plan; certainly, he is not trying to enforce one. Instead, he is arguing that he was orally misled as to the actual terms of the Plan.

Nevertheless, the Court finds that Plaintiff's failure to allege that he actually relied on any misrepresentation regarding *LD* benefits is fatal to his claim that MetLife arbitrarily and capriciously denied his claim. The SAC does not contain a single allegation of misinformation regarding LD benefits. The only misinformation alleged was Ilene's statement that Plaintiff was ineligible for SD benefits. (SAC ¶¶ 43-49.) Even assuming that Ilene acted in a fiduciary capacity, the Court declines to transform her obligation to provide accurate answers with respect to SD benefits, *see Estate of Becker v. Eastman Kodak Co.*, 120 F.3d 5, 10 (2d Cir. 1997), into an affirmative duty to volunteer information that Plaintiff did not ask for − namely, information regarding LD benefits. Because Plaintiff has not alleged that anyone told him that he was ineligible for LD benefits, and because nothing in the SPD suggests that he would have been ineligible, he cannot claim that MetLife was arbitrary and capricious in not excusing his late filing based on the misrepresentation regarding SD benefits.[6]

Claim 5 also fails to the extent it is premised on MetLife's refusal to excuse Plaintiff's late filing based on ambiguities in the SPD. Just as Plaintiff fails to allege that the SPD in any way caused his misapprehension regarding the claims process, he also does not allege that he raised the issue of ambiguities in the SPD with MetLife during the claim and appeal

---

[6] In paragraph 101 of the SAC, Plaintiff alleges generally that *MetLife* knew that Plaintiff was told he was ineligible for SD and LD benefits. However, this statement is wholly conclusory as Plaintiff nowhere alleges that he was in fact told that he was ineligible for LD benefits, and the portion of the SAC detailing the alleged conversation with Ilene makes no reference whatsoever to LD benefits.

8

process. Thus, even if the SPD indeed contained ambiguities – a question the Court need not and does not reach – Plaintiff failed to apprise MetLife of such ambiguities in order to explain and excuse his late filing. MetLife cannot have acted arbitrarily and capriciously simply because it failed to consider a justification for late filing that Plaintiff had not even raised. Accordingly, Plaintiff's fifth cause of action must be dismissed.[7]

### III. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted. The Clerk of the Court is respectfully directed to terminate the motions located at Doc. Nos. 29 and 31 and to close this case.

SO ORDERED.

_____
RICHARD J. SULLIVAN
United States District Judge

Dated: March 18, 2013
New York, New York

\*     \*     \*

Plaintiff is represented by Harriette N. Boxer, The Law Office of Harriette N. Boxer, 31 East 32nd Street, Suite 300, New York, New York 10016.

Defendants Credit Suisse, Inc. and Aon Hewitt, Inc. are represented by Ira G. Rosenstein and Melissa D. Hill, Morgan Lewis & Bockius, LLP, 101 Park Avenue, New York, New York 10178.

Defendant Metropolitan Life Insurance Co. is represented by Matthew Paul Mazzola and Michael H. Bernstein, Sedgwick LLP, 125 Broad Street, 39th Floor, New York, New York 10004.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3-19-13

---

[7] Plaintiff also argues that MetLife operated with an impermissible conflict of interest. However, because Plaintiff has not plausibly alleged that MetLife's decision was arbitrary and capricious, the Court need not reach that issue.

9